**Richard FARR, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (TRW, Inc.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 14, 2003.

Decided April 4, 2003.

Reargument Denied June 4, 2003.

Carole Hendrick, Collegeville, for petitioner.

Joseph W. Moyer, York, for respondent.

Before COLINS, President Judge, FRIEDMAN, J., and FLAHERTY, Senior Judge.

OPINION BY President Judge COLINS.

Richard Farr petitions for review of an order of the Workers' Compensation Appeal Board that affirmed the decision of a Workers' Compensation Judge that denied Farr's Claim Petition based on his claim that he had contracted asbestosis as a result of his employment with TRW, Inc. We affirm the Board.

On August 24, 1998, Richard Farr filed a claim petition alleging that he had sustained a work-related injury on June 21, 1997, in the nature shortness of breath, wheezing, fatigue, and limited mobility due to a lack of oxygen. Farr alleged that his injury occurred as a result of his continuous exposure to deleterious chemicals, gases and fumes in the course of his employment with TRW. At the hearing on February 24, 1999, Farr amended his petition to include a claim for asbestosis under Sections 301(c)(2) and 108(l) of the Workers' Compensation Act,[1] and, at the hearing held on December 2, 1999, further amended the claim to include the omnibus occupational disease provisions of Section 108(n) of the Act. Finally, in a letter dated May 10, 2000, Farr again amended his petition to include an alternate theory of relief under Section 301(c)(1) of the Act. TRW filed a timely answer denying the allegations of the claim and raising the statute of limitations as a defense.

Farr worked for TRW from September 1956 to June 1997 in a variety of positions. He was a custodian from 1974 to 1984, a hazardous materials handler from 1984 to 1987 and an inspector from 1987 to 1997. Farr testified that the only time he was aware that he actually came in contact with asbestos was as a custodian in the 1970s and that he saw what he believed to be asbestos in a heater in the 1970s as well. Farr testified that asbestos was removed from the TRW plant where he worked in 1977 and in 1983 or 1984. TRW's records and the testimony of other witnesses indicate that asbestos was removed in 1985 and 1988. Farr also testified that the air in the plant contained smoke, oil mist and fumes from coolants used in the manufacturing process.

The first time that Farr missed work due to his respiratory condition was June 21, 1997, the day he alleged that his disability rendered him unable to work and two days after he notified his employer of a work-related lung injury. Farr immediately began receiving short-term disability payments of $200.00 per week, and he received long-term benefits of $1,287.51 per month beginning January 1, 1998. Farr now receives Social Security disability benefits, which offset his long-term disability to a net amount of $393.51 per month.

Three co-workers testified on Farr's behalf. Vernon Stine worked with Farr until the end of 1989. He testified that asbestos insulation was removed from the plant in 1984 and that Farr had worked in the forging shop where he would have worn heavy gloves and aprons, but Stine was unsure whether those items contained asbestos. According to Farr's testimony and his employment records, Farr never worked in the forging shop.

Douglas Koser, who has worked at TRW since 1980 and was president of the union at TRW at the time of the hearing, testified that asbestos was removed from the ceiling of the gauge crib area by use of a containment system, but he was unsure

---

1. Act of June 2, 1915, P.L. 736, as amended. 77 P.S. §§ 411(2) and 27.1(l).

when this had occurred. He testified that there had occasionally been a haze or mist in the air of the plant but that it had been controlled by filters installed by TRW in 1994.

Francis Blasick, TRW's engineering manager, testified to the removal of asbestos from the gauge crib area with the use of a containment system and testified further that TRW had installed equipment to recapture oil and coolant vapors produced in the manufacturing process. He could not identify any position in which Farr would have worked in the plant that would have put him in close proximity to asbestos or to anyone handling asbestos.

Farr presented the testimony of Professor Lester Levin, an industrial hygienist. Professor Levin examined each area of the TRW plant in question during a visit on March 4, 2000, and was given the opportunity to examine TRW's relevant records. Professor Levin concluded that the bulk of the asbestos in the plant had been removed in two separate projects in 1985 and 1988. Professor Levin testified that 26 pounds of non-friable asbestos was removed from the plant in early 1991 and that the last removal of asbestos occurred in 1994 when non-friable asbestos was removed from a cooling tower outside the plant. A material is friable if it will crumble to a breathable dust; non-friable material breaks into chunks and does not produce dust. Professor Levin said that Farr had related to him only one instance when he had actually touched asbestos. Levin could not comment on how much asbestos anyone in the plant had been exposed to, including Farr, and could draw no conclusions about the effects of asbestos or any other environmental hazards at the TRW plant.

Farr presented the medical testimony of Dr. John Bulger, M.D. Dr. Bulger testified that he had practiced one year in internal medicine and that he had no specialized training in pulmonary disease or asbestosis. TRW presented the medical testimony of Paul Epstein, M.D. Dr. Epstein, a B reader and a specialist in internal medicine and pulmonary disease, is also a clinical professor of medicine at the University of Pennsylvania and the author of medical texts on asbestosis. Both experts testified that it takes years of exposure to significant amounts of asbestos to develop the disease of asbestosis. Dr. Epstein explained that a significant history would involve direct work with asbestos or working next to those who work with it on a daily basis over an extended period of time. A casual, occasional handling of the material, he said, will not suffice.

Both medical experts concluded that Farr suffered from asbestosis. However, the WCJ found that neither Dr. Bulger's nor Dr. Epstein's testimony established a direct causal link between Farr's employment with TRW and his asbestosis. Dr. Epstein testified that Farr's condition would not have been caused by or exacerbated by exposure to the dust, mist and fumes present in the TRW plant.

■ Among the WCJ's findings and conclusions of law is his conclusion that Farr's claim is barred by the statute of limitations. Farr, in his voluminous questions presented,[2] complains that the Board erred in affirming that conclusion. Because we agree with the Board, the only question we must address is whether Farr's claim is barred by the applicable statute of limitations.[3]

The statute of limitations for an occupational injury compensable under Section

2. Farr asked us to consider a total of fifteen questions.

3. Our standard of review is limited to determining whether findings are supported by substantial evidence, an error of law was

108 of the Act is established by Section 301(c)(2) of the Act, which states,

> The terms "injury," "personal injury," and "injury arising in the course of his employment," as used in this act, shall include, unless the context clearly requires otherwise, occupational disease as defined in section 108 of this act: Provided, That whenever occupational disease is the basis for compensation, for disability or death under this act, it shall apply only to disability or death resulting from such disease and occurring within three hundred weeks after the last date of employment in an occupation or industry to which he was exposed to hazards of such disease . . . "

Section 301(c)(2); 77 P.S. § 411(2).

█ The three-hundred week period prescribed in the Act is measured from the last date of exposure to the hazard alleged to cause the disease, not from the last date of employment. *Cable v. Workers' Compensation Appeal Board (Gulf Oil/Chevron USA, Inc.),* 541 Pa. 611, 664 A.2d 1349 (1995).

█ The credible testimony presented in this matter established that the last time that Farr could have been exposed to asbestos in the environment within the TRW plant where he worked was 1988. Farr alleges that his disability commenced on June 21, 1997. Even if we discount the remaining weeks of 1988 and all of 1997 up to June 21, that is still a period in excess of four hundred weeks, well beyond the three-hundred week limitation established in the Act.

Accordingly, we affirm the order of the Workers' Compensation Appeal Board in this matter.

Judge FRIEDMAN concurs in the result only.

committed or constitutional rights were violated. *Schriver v. Workers' Compensation Ap-*

*ORDER*

AND NOW, this 4th day of April 2003, the order of the Workers' Compensation Appeal Board in this matter is affirmed.

*ORDER*

NOW, November 19, 2002, upon consideration of petitioner's application for leave to proceed in forma pauperis, which application also seeks waiver of this Court's filing fee, the application is granted, the filing fee is waived and petitioner shall proceed in conformity with Pa. R.A.P. 2151(b) and 2187(c).

*peal Board (Department of Transportation),* 699 A.2d 1341 (Pa.Cmwlth.1997).